UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **PAMELA FLETCHER AND CHRISTOPHER FLETCHER**   **Plaintiffs,**   v.   **COVERWALLET OF CALIFORNIA, et al.,**   **Defendants.** | }<br>}<br>}<br>}<br>}  Case No.: 2:21-cv-00671-MHH<br>}<br>}<br>}<br>} |

## MEMORANDUM OPINION

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants CoverWallet, Inc. and Progressive Specialty Insurance Company have asked the Court to dismiss this action.[1] The defendants contend that *res judicata* bars *pro se* plaintiffs Pamela Fletcher and Christopher Fletcher from pursuing their claims in this federal action because the Fletchers filed a related state court action which the state court dismissed on the merits. (Doc. 9).[2] Ms. Fletcher has opposed the motion

---

[1] The plaintiffs identify Progressive Commercial Insurance as a defendant in their amended complaint. (Doc. 3, p. 2). Progressive Specialty Insurance Company has appeared to defend this action. Counsel for Progressive explains that Progressive Specialty Insurance underwrote the policy at issue in this case, and there is no legal entity named Progressive Commercial Insurance. (Doc. 9, p. 3).

[2] In their amended motion to dismiss, the defendants indicated that they were attaching to their motion copies of the relevant state court filings, (Doc. 9), but the Court has not located the state court filings in the record. The Court may take judicial notice of those state court filings. *See*

1

to dismiss.  (Doc. 11).[3]

To resolve the motion to dismiss, the Court first reviews the legal standard for motions to dismiss.  Then, the Court describes the allegations in the amended complaint in this action and in the complaint in the related state court action.  Finally, the Court discusses the law regarding *res judicata* and applies it to the record in this case.

---

*Grider v. Cook*, 522 Fed. Appx. 544, 546 n.2 (11th Cir. 2013) ("the district court was permitted to take judicial notice of Grider's state court criminal proceedings"); *see also Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1041 n.18 (11th Cir. 2014) (taking judicial notice of DeKalb County Superior Court's Online Judicial System pursuant to Fed. R. Evid. 201).  Consistent with best practices, the Court has provided with this opinion as Attachments 1, 2, and 3 copies of the state court complaint, the state court dismissal order, and an insurance policy document that appears in the state court record.  *See Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 652–53 (11th Cir. 2020).

[3] By separate order, the Court has asked Mr. Fletcher to indicate whether he wishes to voluntarily dismiss his claims in this matter.  To date, only Ms. Fletcher has signed the complaint and other submissions to the Court.  (Doc. 1, p. 15; Doc. 3, p. 21; Doc. 11, p. 6).  Because Mr. Fletcher is proceeding without an attorney, by rule, he must sign every document that he submits to the Court, Fed. R. Civ. P. 11(a), and Ms. Fletcher may not represent Mr. Fletcher's interests because she is not an attorney.  L.R. 83.1(d); *see, e.g.*, *Turner v. Cunningham*, 2008 WL 2157113, *1 n. 2 (S.D. Ala. May 20, 2008) ("Of the five named *pro se* plaintiffs, the only one to sign the Complaint is Fred Turner. This is improper. To the extent that all five plaintiffs are proceeding without counsel, each of them must sign all pleadings and documents filed in this District Court, and must state their addresses and telephone numbers. One plaintiff cannot sign on behalf of the others, for the simple reason that a *pro se* plaintiff cannot represent other *pro se* plaintiffs in legal proceedings in federal court. *See, e.g.,* Rule 11(a), Fed.R.Civ.P. ("Every pleading, written motion, and other paper must be signed ... by a party personally if the party is unrepresented."); *Miller v. Bobbitt,* 779 F.Supp. 495, 496 (D.Or.1991) (pointing out that a *pro se* plaintiff cannot represent another *pro se* plaintiff, and that all such plaintiffs must sign all pleadings in which they wish to be a part). For Fred Turner to represent the other plaintiffs in these proceedings would constitute the unauthorized practice of law, pursuant to Alabama Code §§ 34-3-6 and 34-3-7."); Fed. R. Civ. P. 11(a) ("The court must strike [a pro se litigant's] unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.").

.

**I.**

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss, a district court must view the allegations in a complaint in a light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). A district court must accept well-pleaded facts as true. *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'" *Maledy v. City of Enterprise*, 2012 WL 1028176, *1 (M.D. Ala. March 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

This is particularly true with respect to *pro se* complaints. Courts must liberally construe *pro se* documents. *Erickson*, 551 U.S. at 94. "'[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see also Tannenbaum v. United States*, 148 F.3d

1262, 1263 (11th Cir. 1998) ("Pro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."). *Cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Still, the Court "may not serve as de facto counsel for a party, or … rewrite an otherwise deficient pleading in order to sustain an action." *Ausar-El ex. rel. Small, Jr. v. BAC (Bank of America) Home Loans Servicing LP*, 448 Fed. Appx. 1, 2 (11th Cir. 2011) (internal quotations and citations omitted).

Accordingly, in this opinion, the Court presents the factual allegations in the amended complaint in the light most favorable to Ms. Fletcher and Mr. Fletcher.

## II.

The Fletchers own and operate a small trucking company named Fletcher Family Freight, LLC. (Doc. 3, p. 7, ¶ 1). The company needed insurance coverage for a Volvo VN tractor-trailer truck, so Mr. Fletcher contacted CoverWallet, an insurance agency. (Doc. 3, p. 8, ¶ 4). Through CoverWallet, Fletcher Family Freight, LLC obtained a commercial truck insurance policy from Progressive. The policy has an effective date of July 27, 2020. (Doc. 3, p. 8, ¶ 4; Attachment 3).[4]

---

[4] In the amended complaint, the Fletchers allege that CoverWallet had discussions with Mr. Fletcher about writing the policy at issue in a family member's name. (Doc. 3, p. 8, ¶ 4). The Fletchers also allege that Mr. Fletcher's "mother's name was on the policy when she was not a part of his business information," and when Mr. Fletcher asked Progressive why his mother's name was on the policy, "Progressive opted to keep the policyholders as it was . . . ." (Doc. 3, p. 11, ¶ 10). The insurance document in the state court record states that the policy applicant is a corporation or an LLC. Attachment 3, p. 1. Each page of the document identifies Fletcher Family Freight, LLC and the policy number that the Fletchers include in their amended complaint.

4

On August 7, 2020, Mr. Fletcher received "a letter from CoverWallet on Progressive letterhead" concerning copies of accident reports, proof of insurance for personal vehicles, and a CDL license. (Doc. 3, p. 9, ¶ 7). The letter advised Mr. Fletcher to fax the documents "immediately or he would incur premium increase." (Doc. 3, p. 9, ¶ 7). The Fletchers allege that Mr. Fletcher had emailed the documents to CoverWallet agent Jeffrey Kline when he bought the commercial truck insurance policy, and Mr. Kline had received the documents. The Fletchers contend that the fax number in the August 2020 letter did not work, and the letter did not include an "email address or other address to have these documents sent . . . ." (Doc. 3, p. 9, ¶ 7).

One week later, on August 15, 2020, Mr. Fletcher received a "letter from CoverWallet on Progressive letterhead" concerning a premium increase effective August 6, 2020 relating to adjustments to Mr. Fletcher's driving history. (Doc. 3, p. 9, ¶ 8). Mr. Fletcher contacted CoverWallet immediately to investigate the

---

Attachment 3; (Doc. 3, p. 8, ¶ 4). The Court may consider the policy document without converting the defendants' motion to dismiss into a motion for summary judgment because the policy documents are incorporated into the amended complaint by reference, and no party disputes the fact that FFF obtained an insurance policy from Progressive. *Day v.* Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005) ("In *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002), we held that the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged. *Id.* Our prior decisions also make clear that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it meets the centrality requirement imposed in *Horsley*.") (some citations omitted).

premium increase. Agent Deanna Rhodes "explained to Mr. Fletcher that Progressive looked at him and his company now as a greater risk due to not receiving this driving history up front and now looked like he was trying to hide something." (Doc. 3, p. 10, ¶ 9). Mr. Fletcher advised Ms. Rhodes that he could not afford the higher premium, and the premium potentially could force him out of business. (Doc. 3, p. 10, ¶ 9).

The Fletchers allege that Ms. Rhodes did not convey to Progressive the information that Mr. Fletcher provided to her, so Mr. Fletcher contacted Progressive directly. (Doc. 3, p. 11, ¶ 10). Progressive explained to Mr. Fletcher that his premium increased because of his driving record, not because of the timing of Progressive's receipt of the driving history information. (Doc. 3, p. 11, ¶ 10).

On November 1, 2020, Ms. Fletcher called Progressive to add coverage so that FFF could qualify to haul holiday loads for Amazon Relay. (Doc. 3, p. 12, ¶ 11). A Progressive customer service representative added the coverage. (Doc. 3, p. 12, ¶ 11). Ms. Fletcher asked Ms. Rhodes at CoverWallet to forward an updated certificate of insurance to Amazon Relay because "this information had to come directly from CoverWallet." (Doc. 3, p. 12, ¶ 11). On January 8, 2021, Ms. Fletcher received an email from Amazon indicating that Amazon had not received an updated certificate of insurance for FFF. (Doc. 3, p. 12, ¶ 12). The Fletchers allege that Ms. Rhodes did not send the required documents to Amazon "until 2

more requests were made from her." (Doc. 3, p. 13, ¶ 12). "By the time Mrs. Rhodes finally sent the updated certificate to Amazon Relay, there were no more large contracts available to haul as this period of time had passed and the business lost out on several $10-20 thousand dollar contracts." (Doc. 3, p. 13, ¶ 12).

The Fletchers contend that on February 13, 2021, they received notice from several brokers for which FFF carried loads that FFF's insurance was pending cancellation. (Doc. 3, p. 13, ¶ 13). Progressive acknowledged that FFF had paid its premium, but "it was apparent [Progressive] had not reported to Federal Motor Carriers that [the premium] was paid," "causing loss of business due to brokers not allowing loads to be booked assuming that insurance was in a pending cancellation status." (Doc. 3, p. 13, ¶ 13).

The Fletchers also allege that in March 2021, Progressive required Mr. Fletcher to make payments to insure his primary truck and a backup truck when both trucks were out of service, and only one was going to return to service when repairs were completed. (Doc. 3, p. 14, ¶ 14). According to the Fletchers, "Progressive and CoverWallet's actions have caused Fletcher Family Freight to deplete all funds set aside for maintenance and repair of equipment to be used for insurance." (Doc. 3, p. 14, ¶ 14).

Fletcher Family Freight sued Progressive and CoverWallet in federal court on May 13, 2021. (Doc. 1). Ms. Fletcher signed the complaint as FFF's *pro se*

representative and acknowledged that the company did not have an attorney. (Doc. 1, p. 15). The Court entered an order advising FFF that, per *Palazzo v. Gulf Oil Corp.,* 764 F.2d 1381 (11th Cir. 1985), the company could not proceed *pro se*. (Doc. 2). On May 20, 2021, Ms. Fletcher submitted an amended complaint in which she and Mr. Fletcher are named as plaintiffs. (Doc. 3). In the amended complaint, the Fletchers allege that they "have been damaged in that they have lost the premiums overpaid for such commercial truck insurance from July, 2020 to July, 2021," they have lost business, and they have "suffered extreme emotional distress and mental anguish," among other injuries. (Doc. 3, p. 16, ¶ 20). The Fletchers assert claims against the defendants for breach of contract; willful, reckless, and mistaken misrepresentation and deceit; and bad faith. (Doc. 3, pp. 16-20). The Fletchers demand compensatory and punitive damages, interest, and costs. (Doc. 3, p. 21).

Four months before it filed its complaint in this action, on January 30, 2021, Fletcher Family Freight filed a complaint against the defendants in the Madison County, Alabama Small Claims Court. FFF alleged that it had to pay a thirty percent premium increase on its insurance because CoverWallet did not forward Mr. Fletcher's driving record to Progressive. (Attachment 1). FFF sought $6,000 in damages for the increase in premiums allegedly caused by CoverWallet's negligence and Progressive's refusal to reduce the improperly elevated rates.

(Attachment 1). On June 21, 2021, the state court dismissed FFF's action with prejudice for failure to prosecute. (Attachment 2).

## III.

"The doctrine of res judicata, or claim preclusion, operates to bar a party in a prior action from relitigating a claim that was or could have been raised in that action if four elements are present." *Hosseinzadeh v. Green Point Mortg. Funding, Inc.*, 577 Fed. Appx. 925, 927 (11th Cir. 2014) (citing *In re Piper Aircraft Corp.*, 244 F.3d 1289 (11th Cir. 2001)); *see also Wesch v. Folsom*, 6 F.3d 1465, 1471 (11th Cir. 1993). The elements are: "(1) the prior decision was rendered by a court of competent jurisdiction; (2) that decision was a final judgment on the merits; (3) the cases involved the same parties or their privies; and (4) the cases involve the same cause of action." *Hosseinzadeh*, 577 Fed. Appx. at 927; *see also Piper Aircraft*, 244 F.3d at 1296.[5] "If even one of these elements is missing, res judicata is inapplicable." *Piper Aircraft*, 244 F.3d at 1296 (applying *res judicata* to determine whether claims in state court action were or could have been litigated in earlier bankruptcy proceeding). "It is well settled that res judicata turns primarily on the commonality of the *facts* of the prior and subsequent actions, not on the nature of

---

[5] In *Wesch v. Folsom*, the Eleventh Circuit stated that "[f]ederal courts apply the law of the state in which they sit with respect to the doctrine of *res judicata*." *Wesch*, 6 F.3d at 1471. The four *res judicata* factors that the Eleventh Circuit identified in *Piper Aircraft* are consistent with the four factors that Alabama courts use to assess claim preclusion. *Wesch*, 6 F.3d at 1471; *see also Old Republic Ins. Co. v. Lanier*, 790 So. 2d 922, 928 (Ala. 2000).

the remedies sought." *Piper Aircraft*, 244 F.3d at 1295 (emphasis in *Piper Aircraft*). A court must compare with great precision "the specific facts of the [] claims being examined." *Piper Aircraft*, 244 F.3d at 1298.

The Eleventh Circuit has frequently held that "res judicata does *not* apply where the facts giving rise to the second case only 'arise after the original pleading is filed in the earlier litigation.'" *Piper Aircraft*, 244 F.3d at 1298 (quoting *Manning v. City of Auburn,* 953 F.2d 1355, 1360 (11th Cir. 1992) (emphasis in *Piper Aircraft*)). "[T]he doctrine of res judicata does not punish a plaintiff for exercising her option not to supplement the pleadings with an after-acquired claim. We reasoned that the parties frame the scope of litigation at the time the complaint is filed and that a judgment is only conclusive regarding the matters that the parties might have litigated at that time . . . ." *Piper Aircraft*, 244 F.3d at 1298; *see also Piper Aircraft*, 244 F.3d at 1298-99.

"At all times the burden is on the party asserting res judicata (here, [CoverWallet and Progressive]) to show that the later-filed suit is barred." *Piper Aircraft*, 244 F.3d at 1296.

Turning to the four *res judicata* factors, the first two factors are easily satisfied: the Madison County, Alabama Small Claims Court is a court of competent jurisdiction, and that court's June 21, 2021 order dismissed FFF's action with prejudice for failure to prosecute. Under Alabama law, a claim

dismissed for failure to prosecute "operates as an adjudication upon the merits." Ala. R. Civ. P. 41(b).

The third factor requires some analysis. FFF is an LLC with two owners, Christopher Fletcher, and his mother, Pamela Fletcher. (Doc. 3, p. 7). Christopher Fletcher is a driver for FFF and the owner of the Volvo trucks insured in the Progressive policy at issue. (Attachment 3, p. 3; Doc. 3, p. 8). Ms. Fletcher filed the state court action as an authorized representative of FFF. (Attachment 1). Ms. Fletcher, as the president, owner, and *pro se* representative for FFF, filed this action on behalf of FFF. (Doc. 1, p. 15). After the Court informed FFF that it could not proceed *pro se,* Ms. Fletcher, acting *pro se*, filed an amended complaint naming herself and Christopher Fletcher as plaintiffs in this action. (Doc. 3, p. 1). FFF, Christopher Fletcher, and Pamela Fletcher list their address as 106 Stagecoach Drive, Madison, AL 35757 in both the state court action and the amended complaint in this action. (Attachment 1; Doc. 3, p. 1). Thus, there is substantial overlap between the plaintiffs in the state court action and this federal action. The named defendants in the state court complaint and in the complaint in this action are CoverWallet and Progressive Commercial Insurance. (Attachment 1; Doc. 3, p. 2). There are small differences in the description of CoverWallet in the two complaints, but in all relevant respects, the defendants in this action and

in the state court action are identical.[6]  In sum, the two cases involve the same parties or their privies; the third factor is satisfied.

Progressive and CoverWallet have carried their burden on the fourth factor with respect to the breach of contract claim in this action.  The allegations in FFF's state court action and the allegations relating to the Fletchers' breach of contract claim in their amended complaint in this action are the same.  Central to both is the allegation that CoverWallet did not forward relevant documents to Progressive, which caused Progressive to charge FFF higher insurance premiums.  (Doc. 3, pp. 9-11, 16-17,  ¶¶ 7-10, 21-25; Attachment 1).  Because the same factual allegations support FFF's state court claim and the Fletchers' breach of contract claim in their federal complaint, *res judicata* bars the Fletchers from pursuing their breach of contract claim in this action.

The Fletchers' remaining fraud and bad faith claims in their federal complaint survive the defendants' *res judicata* challenge as those claims relate to conduct other than Progressive's refusal to lower FFF's premium in 2020.  The Fletchers could not have litigated their fraud and bad faith claims in the Madison

---

[6] CoverWallet is described as "in Calif" in the state court action and "of Calif" in the amended complaint in this action.  (Attachment 1; Doc. 3).  Cover Wallet is identified by two different addresses, one in California and the other in New York, in the state court complaint and in the amended federal complaint, respectively.  (Attachment 1; Doc. 3).  The Fletchers allege that CoverWallet is organized under the laws of California and has a principal place of business in New York.  (Doc. 3, pp. 4, 7).  Applying the liberal standards governing *pro se* pleadings, the Court finds these differences inconsequential for purposes of *res judicata*.

County Small Claims Court because that court has a jurisdictional limit of $6,000, and the Fletchers allege that FFF "lost out on several contracts $10-20 thousand dollar contracts" and suffered other out-of-pocket losses because of the defendants' alleged tortious conduct. (Doc. 3, pp. 13-14). In addition to compensatory damages for economic losses, the Fletchers seek compensatory damages for mental anguish and punitive damages. (Doc. 3, p. 21). Because the damages the Fletchers seek for their tort claims exceed the jurisdictional limit of the Small Claims Court, the Fletchers could not bring the tort claims in their state court action.[7]

In addition, viewing the allegations in the Fletchers' amended federal complaint in the light most favorable to them, many of the events that support the Fletchers' tort claims occurred after the Fletchers filed their state court complaint. "Res judicata does *not* apply where the facts giving rise to the second case only arise after the original pleading is filed in the earlier litigation." *Piper Aircraft*, 244 F.3d at 1298 (internal marks and citation omitted) (emphasis in *Piper Aircraft*). And the alleged facts relating to the defendants' purported failure to

---

[7] "The Small Claims Court is a special civil division of the District Court where individuals as well as businesses can settle disputes and disagreements. The maximum amount you may sue or be sued for is $6,000. Procedures are simple, informal, and inexpensive. There are no juries and you may appear before the judge with or without an attorney." http://www.madisoncountycircuitclerk.org/small-claims/ (last visited March 30, 2022).

provide documentation that FFF needed to secure loads from brokers differ significantly from the alleged facts concerning FFF's premium increase in 2020. Because the fourth element is missing with respect to the Fletchers' tort claims, "res judicata is inapplicable." *Piper Aircraft*, 244 F.3d at 1296.

## IV.

The Court grants the defendants' motion to dismiss with respect to Count One of the Fletchers' complaint. (Doc. 3). The Court denies the motion to dismiss for all other counts.

**DONE** and **ORDERED** this March 30, 2022.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE